ORAL ARGUMENT NOT YET SCHEDULED

BRIEF FOR APPELLEE
———————————————

UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT
———————————————

No. 24-3011
———————————————

UNITED STATES OF AMERICA,                    Appellee,

v.

JAMES LITTLE,                                Appellant.

———————————————

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA
———————————————

MATTHEW M. GRAVES
United States Attorney

CHRISELLEN R. KOLB
NICHOLAS P. COLEMAN
PATRICK HOLVEY
* REUVEN DASHEVSKY
MA Bar # 693966
Assistant United States Attorneys
* Counsel for Oral Argument
601 D Street, NW, Room 6.232
Washington, D.C. 20530
Reuven.Dashevsky@usdoj.gov
(202) 252-6829

Cr. No. 21-315 (RCL)

# CERTIFICATE OF PARTIES, RULINGS, AND RELATED CASES

Pursuant to D.C. Circuit Rule 28(a)(1), appellee hereby states as follows:

## Parties and Amici

The parties to this appeal are appellant, James Little, and appellee, the United States of America.

## Rulings Under Review

Reference to the ruling at issue appears in appellant's brief.

## Related Cases

Little previously appealed the district court's imposition of a "split sentence" of both incarceration and probation for the commission of a single petty offense in Case No. 22-3018. This Court vacated Little's split sentence and remanded to the district court for resentencing. *United States v. Little*, 78 F.4th 453 (D.C. Cir. 2023). The current appeal arises from the proceedings held and sentence imposed by the district court after remand.

Other defendants convicted of a single petty offense for participating in the January 6, 2021, attack on the United States Capitol appealed split sentences of incarceration and probation to this Court. Following this Court's decision in Little's first appeal, these cases were remanded to the district court for resentencing. *See United States v. Caplinger*, No. 22-3057; *United States v. Morrissey*, No. 22-3059; *United States v. Mazzio*, No. 22-3079; *United States v. Hendrix*, No. 22-3103. These defendants have since been resentenced.

Little's double jeopardy arguments mirror those of other January 6 defendants. Most notably, the defendant in *Caplinger* opposed the government's request that the case be remanded to the district court for resentencing and instead requested that the Court vacate the probationary term of his split sentence. Similar to Little, Caplinger argued that the Double Jeopardy Clause prohibited any further punishment because he had already completed the initially imposed term of imprisonment. The Court did not heed Caplinger's request when it vacated his split sentence and remanded the case for resentencing. *United States v. Caplinger*, No. 22-3057, 2024 WL 718720 (D.C. Cir. Feb. 21, 2024).

## STATUTES AND REGULATIONS

Pursuant to D.C. Circuit Rule 28(a)(5), appellee states that all pertinent statutes and regulations are contained in the Addendum to the Brief for Appellant.

# T<small>ABLE OF</small> C<small>ONTENTS</small>

C<small>OUNTERSTATEMENT OF THE</small> C<small>ASE</small> ............................................... 1

    Background ........................................................ 3

        Little's Offense Conduct ................................ 3

        The Split Sentence ....................................... 4

        Little's First Appeal ..................................... 5

        The Case on Remand .................................... 7

        The Resentencing Hearing ........................... 11

S<small>UMMARY OF</small> A<small>RGUMENT</small> ....................................................... 14

A<small>RGUMENT</small> ............................................................................. 18

    The New Sentence Imposed on Remand Does Not Violate
    Double Jeopardy. ................................................. 18

        A.   Applicable Legal Principles and Standard of Review ........ 18

        B.   The Court Already Rejected Little's Requested Relief
           in His First Appeal. ............................................ 19

        C.   The New Sentence Does Not Violate Double Jeopardy
           Because It Credits All Time Previously Served and
           Falls within the Statutory Maximum. ............................. 23

        D.   Little's Double Jeopardy Arguments Are Meritless. ........... 26

           1.   *Lange* and *Bradley* Are Not Controlling. ..................... 27

           2.   Time Served on Probation can be Credited Against
              Imprisonment............................................... 38

           3.   Little Had No Legitimate Expectation of Finality
              in the Prison Term of the Split Sentence..................... 47

C<small>ONCLUSION</small>............................................................................. 52

# Table of Authorities*

**Cases**

*Andre v. United States*, 213 A.3d 1286 (D.C. 2019).................................. 40

*Bozza v. United States*, 330 U.S. 160 (1947) ........................................... 51

*Davenport v. United States*, 353 F.2d 882 (D.C. Cir. 1965) ............... 7, 50

*Ex parte Lange*, 85 U.S. 163 (1873) ..............................7, 15, 16, 28, 29, 36

*Griffin v. Wisconsin*, 483 U.S. 868 (1987) .............................41, 42, 43, 44

*Hartman v. Duffey*, 88 F.3d 1232 (D.C. Cir. 1996) ...........................22, 23

*In re Bradley*, 318 U.S. 50 (1943)......................................7, 15, 16, 28, 36

*In re Sealed Case*, 349 F.3d 685 (D.C. Cir. 2003) ................................... 19

*In re Sealed Case*, 573 F.3d 844 (D.C. Cir. 2009) ................................... 41

* *Jones v. Thomas*, 491 U.S. 376
   (1989)....8, 9, 10, 15, 16, 17, 18, 19, 23, 24, 29, 30, 34, 38, 39, 40, 48, 51

*LaShawn A. v. Barry*, 87 F.3d 1389 (D.C. Cir. 1996) (en banc)........19, 22

* *North Carolina v. Pearce*, 395 U.S. 711 (1969)..........10, 15, 18, 19, 23, 24

*State v. Jepsen*, 907 N.W.2d 495 (Iowa 2018) ......................................... 40

*United States v. Blackson*, 709 F.3d 36 (D.C. Cir. 2013) ........................ 21

*United States v. Brice*, 748 F.3d 1288 (D.C. Cir. 2014) ........................... 22

---

\* Authorities upon which we chiefly rely are marked with asterisks.

*United States v. Caplinger*, No. 22-3057, 2024 WL 718720
(D.C. Cir. Feb. 21, 2024) .......................................................... 21

*United States v. Carpenter*, 320 F.3d 334 (2d Cir. 2003) .................. 40, 45

*United States v. Casseday*, 807 F. App'x 5 (D.C. Cir. 2020).............. 10, 49

*United States v. Derbes*, No. 02-cr-10391, 2004 WL 2203478
(D. Mass. Oct. 1, 2004) .................................................... 40, 45

*United States v. DiFrancesco*, 449 U.S. 117 (1980) ............................ 8, 49

*United States v. Fogel*, 829 F.2d 77
(D.C. Cir. 1987)......................................................9, 10, 24, 32, 48, 49, 50

*United States v. Godoy*, 706 F.3d 493 (D.C. Cir. 2013) ........................... 41

*United States v. Gordon*, 961 F.2d 426 (3d Cir. 1992)............................. 42

*United States v. Granderson*, 511 U.S. 39 (1994) .................................... 42

*United States v. Hayes*, 249 F.2d 516 (D.C. Cir. 1957)...................... 24, 50

*United States v. Holmes*, 822 F.2d 481 (5th Cir. 1987) .................... 32, 33

*United States v. Knights*, 534 U.S. 112 (2001)........................................ 42

*United States v. Little*, 78 F.4th 453
(D.C. Cir. 2023)......................................................2, 3, 4, 6, 8, 20, 22, 41

* *United States v. Lominac*, 144 F.3d 308
(4th Cir. 1998)........................................................10, 25, 33, 35, 37, 40

* *United States v. Martin*, 363 F.3d 25
(1st Cir. 2004) ........................... 10, 11, 24, 32, 36, 40, 41, 42, 43, 44, 45

*United States v. McCallum*, 721 F.3d 706 (D.C. Cir. 2013) .................... 19

*United States v. McMillan*, 917 F.2d 773 (3d Cir. 1990)..........................24

*United States v. Miller*, 991 F.2d 552 (9th Cir. 1993) ......................40, 45

*United States v. Morris*, 116 F.3d 501 (D.C. Cir. 1997) ........................50

*United States v. Pyles*, 862 F.3d 82 (D.C. Cir. 2017)........................38, 43

*United States v. Rhodes*, 106 F.3d 429 (D.C. Cir. 1997) ........................50

*United States v. Townshend*, 178 F.3d 558 (D.C. Cir. 1999) .................49

\* *United States v. Versaglio*, 85 F.3d 943 (2d Cir. 1996) ..............32, 35, 36

## Other References

18 U.S.C. § 1752(a)(1) ..................................................................... 1

18 U.S.C. § 1752(a)(2) ..................................................................... 1

18 U.S.C. § 3551 .................................................................... 7, 22

18 U.S.C. § 3553 ......................................................................... 5

18 U.S.C. § 3553(a) ......................................................... 11, 17, 37, 41

18 U.S.C. § 3553(a)(2) ................................................................. 45

18 U.S.C. § 3553(a)(2)(A) ............................................................... 5

18 U.S.C. § 3553(a)(2)(B) ........................................................... 5, 41

18 U.S.C. § 35539(a)(2)(C) .......................................................... 5, 41

40 U.S.C. § 5104(e)(2)(D) ............................................................... 2

40 U.S.C. § 5104(e)(2)(G) .......................................................... 2, 26

40 U.S.C. § 5109(b) ................................................................... 26

# ISSUE PRESENTED

Whether the imposition of a prison sentence on remand violates the Double Jeopardy Clause where the new sentence credits all time previously served in prison and on probation and does not exceed the maximum punishment authorized by statute.

UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT
————————————————

No. 24-3011
————————————————

UNITED STATES OF AMERICA,                                  Appellee,

v.

JAMES LITTLE,                                              Appellant.

————————————————

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA
————————————————

BRIEF FOR APPELLEE
————————————————

## COUNTERSTATEMENT OF THE CASE

Appellant, James Little, was charged by information with four

offenses arising from his participation in the January 6, 2021, attack on

the United States Capitol: Entering and Remaining in a Restricted

Building or Grounds, in violation of 18 U.S.C. § 1752(a)(1) (Count One);

Disorderly and Disruptive Conduct in a Restricted Building or Grounds,

in violation of 18 U.S.C. § 1752(a)(2) (Count Two); Disorderly Conduct in

a Capitol Building or Grounds, in violation of 40 U.S.C. § 5104(e)(2)(D) (Count Three); and Parading, Demonstrating, or Picketing in a Capitol Building, in violation of 40 U.S.C. § 5104(e)(2)(G) (Count Four) (Joint Appendix ("JA") 17-18). Pursuant to a plea agreement, Little pleaded guilty to Count Four (JA20-34; JA35-52). The Honorable Royce C. Lamberth sentenced Little to a "split sentence" of 60 days in prison, followed by 36 months of probation (JA149-50; JA172; JA182-83).

Little appealed this sentence. This Court found that a split sentence of imprisonment and probation for the commission of a single petty offense is not authorized by statute. *See United States v. Little*, 78 F.4th 453 (D.C. Cir. 2023) (hereinafter, "*Little I*"). The Court vacated Little's sentence and remanded the case to the district court for resentencing. *Id.* at 461. On remand, Judge Lamberth sentenced Little to 150 days in prison, with 60 days of credit for the time that Little spent in prison and an additional 30 days of credit for time spent on probation under the original sentence (JA308; JA333). After crediting, the new sentence requires Little to spend an additional 60 days in prison (JA333). Little timely appealed (JA352).

## Background

### *Little's Offense Conduct*

In late November 2020, Little uploaded an almost 23-minute video to YouTube, contesting the results of the 2020 election and warning of a potential civil war (JA54-55). *See also Little I*, 78 F.4th at 462 (Wilkins, J., dissenting). In the video, Little noted that supporters of then President Trump "owned lots of guns and God forbid we'd ever have to use [them] on you" (JA55). And, on January 6, 2021, the day that Congress convened to certify the Electoral College's vote count, Little joined other rioters in the attack on the Capitol (JA157-58). *See also Little I*, 78 F.4th at 454 ("Little rioted inside the United States Capitol").

As found by the district court, "Little unlawfully entered the Capitol despite conceding that he witnessed law-enforcement officers deploy tear gas and fire rubber bullets to disperse rioters attempting to enter the Capitol" (JA159). "He did not turn back after seeing protestors attempting to unlawfully enter the Capitol by scaling the still-under-construction Inauguration scaffolding" or when he learned that "his mother had a medical emergency" (*id.*). Rather, Little persisted and eventually "entered the Senate Gallery—one of the Capitol's most

sensitive areas" (*id.*). While Little did not engage in violent behavior himself, Little's participation in the riot "was essential in empowering rioters to interrupt the Electoral College certification" (*id.*).

While at the Capitol, Little "boasted" to family and friends via text message about his participation in the attack (JA33; JA160). In these messages, Little explained that "he 'took over the Capital [sic]' because '[s]tealing elections is treason.'" *Little I*, 78 F.4th at 454. After January 6, Little "deflect[ed] responsibility for the violence" of the riot, "blam[ing] *Capitol Police officers* for failing to prevent him from entering the Capitol" and maintaining that the riot was "'patriotic'" and "a legitimate 'protest'" (JA 160).

### *The Split Sentence*

On November 16, 2021, Little pleaded guilty pursuant to a plea agreement to the single petty offense of Parading, Demonstrating, or Picketing in a Capitol Building (JA35-52). On March 14, 2022, the district court imposed a split sentence of 60 days in prison, followed by 36 months of probation (JA150). The district court also imposed a special assessment of $10 and restitution of $500, as well a social media restriction as a special condition of probation (JA150-52).

In reaching this sentence, the district court found that it had authority to impose a split sentence of imprisonment and probation for Little's single offense of conviction (JA149-50; JA157-72). The district court also found that Little's offense conduct justified the imposition of such a sentence (JA149-50; JA159-61). Specifically, the district court concluded that the 18 U.S.C. § 3553 factors supported the incorporation of both punishments into Little's sentence (JA159-61). On one hand, the district court explained that "[t]he nature and circumstances of Little's offense are serious" and that "*some* term of imprisonment is essential to 'reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense'" (JA159 (quoting 18 U.S.C. § 3553(a)(2)(A))). On the other hand, Little's conduct "demand[ed] lengthier involvement from the Court [in the way of probation] to 'afford adequate deterrence to criminal conduct' and 'protect the public from further crimes of the defendant'" (JA159 (quoting 18 U.S.C. § 3553(a)(2)(B)-(C))).

### *Little's First Appeal*

In his first appeal, Little argued that the split sentence of imprisonment and probation was unlawful and requested that he be

immediately discharged from probation because he had already served the prison component of the split sentence. Specifically, he asserted: "Because Little has already served his entire term of imprisonment, the proper remedy is to reverse and remand with instructions that Little be immediately discharged from probation and that an amended judgment be issued reflecting no probationary term." Appellant Br., *United States v. Little*, No. 22-3018, at 40 (D.C. Cir. July 28, 2022); see also Appellant Reply Br., *United States v. Little*, No. 22-3018, at 30 (D.C. Cir. Oct. 7, 2022) (similar).

On August 18, 2023, a divided panel of this Court held that the district court's imposition of a split sentence of incarceration and probation for the commission of a single petty offense was unlawful. *Little I*, 78 F.4th at 454. The panel, however, did not grant Little's request that he "be immediately discharged from probation." Instead, the Court "vacate[d] Little's sentence and remand[ed] to the district court for resentencing." *Id.* at 461. And, without objection from the majority, Judge Wilkins noted in dissent that "[f]ollowing vacatur of the sentence on remand, it appears that the district judge could impose a sentence of imprisonment or probation, and that he would not be limited to the [60]

days or three years that were imposed before if he concluded that either a longer prison or probationary term were required to meet the goals of 18 U.S.C. § 3551." *Id.* at 469 n.3 (citing *Davenport v. United States*, 353 F.2d 882, 884 (D.C. Cir. 1965)).

### *The Case on Remand*

On December 6, 2023, Little asked the district court to forgo a resentencing hearing and to simply "amend the judgment . . . to remove the term of probation and/or terminate his term of probation" (JA188)—echoing his request previously rejected by this Court in *Little I*. Relying on the Supreme Court's decisions in *Ex parte Lange*, 85 U.S. 163 (1873), and *In re Bradley*, 318 U.S. 50 (1943), Little argued that "the Double Jeopardy Clause bar[red] the [district court] from imposing additional punishment at a resentencing" "[b]ecause Little ha[d] fully served his term of imprisonment" under the originally imposed unlawful split sentence (JA189).

On January 17, 2024, the district court denied Little's motion (JA277-89). In doing so, the district court noted that this Court "rejected Little's proposed remedy of instructing the district court to discharge Little from probation and issue an amended judgment reflecting no term

7

of probation" and instead "'vacate[d] Little's sentence and remand[ed] to the district court for resentencing'" (JA279 (quoting *Little I*, 78 F.4th at 461)). The district court thus found that this Court's mandate "did not leave Little's remedy as an open question" and that "[t]he mandate rule require[d] the [district court] to obey that directive by resentencing Little" (JA281).

Further, the district court rejected Little's double jeopardy argument, finding that "[p]rinciples of double jeopardy d[id] not prohibit [it] from imposing an additional term of imprisonment or probation when it resentence[d] Little, as long as it credit[ed] the time already served in prison or probation against any new punishment" (JA283). The district court found Little's reliance on *Lange* and *Bradley* to be "misguided" (JA287). Specifically, citing the Supreme Court's subsequent decisions in *United States v. DiFrancesco*, 449 U.S. 117 (1980), and *Jones v. Thomas*, 491 U.S. 376 (1989), the district court noted that "the Supreme Court has read [*Lange* and *Bradley*] narrowly" and found that they were not controlling (JA284-85, 287-88).

The district court acknowledged that the Supreme Court, in *Lange* and *Bradley*, ordered the release of defendants sentenced to both a fine

8

and imprisonment where the relevant statutes authorized only the imposition of either a fine or imprisonment but not both and where the defendants had already paid the fine in full (JA283-84). But it also recognized that the Supreme Court has since limited the scope of these decisions, "explain[ing] that '*Lange* therefore stands for the uncontested proposition that the Double Jeopardy Clause prohibits punishment in excess of that authorized by the legislature . . . and not for the broader rule suggested by its dictum'" and "that '[the Supreme Court] do[es] not think the law compels application of *Bradley* beyond its facts'" (JA284 (quoting *Jones*, 491 U.S. at 383, 386)). The district court also noted this Court's recognition "that 'the holding[ ] in *Ex parte Lange* . . . now mean[s] only that a court which imposes a sentence greater than that authorized by the legislature subjects a defendant to multiple punishment in violation of the double jeopardy clause'" (JA284-85 (quoting *United States v. Fogel*, 829 F.2d 77, 86-87 (D.C. Cir. 1987))).

Taking note of the six-month statutory maximum prison sentence for Little's offense of conviction, the district court concluded that "[c]rediting time" previously served in prison and on probation would "ensure[ ] the defendant's punishment does not exceed the maximum

prescribed by the legislature, which would violate *Lange*" (JA287-88 (citing *Fogel*, 829 F.2d at 86-87, and *North Carolina v. Pearce*, 395 U.S. 711, 718-19 (1969))). Moreover, the district court noted that while the "'alternative sentences in *Bradley*' of fine and imprisonment 'were of a different type,' meaning that 'it would not have been possible to "credit" a fine against time in prison'" (JA288 (quoting *Jones*, 491 U.S. at 384)), imprisonment and probation may be credited one against the other (JA288 (citing *United States v. Lominac*, 144 F.3d 308, 318 (4th Cir. 1998), *abrogated on other grounds by Johnson v. United States*, 529 U.S. 694 (2000), and *United States v. Martin*, 363 F.3d 25, 38 (1st Cir. 2004)).[1]

The district court explained that, "[i]n crediting time served on probation against a later sentence of imprisonment, or vice versa, [it] would not engage in a 'day-to-day offset' because probation is much less

---

[1] Separately, the district court noted "that 'whether an increase in a sentence violates the Double Jeopardy Clause turns on the extent and legitimacy of a defendant's expectation of finality in that sentence'" (JA285 (quoting *United States v. Casseday*, 807 F. App'x 5, 7 (D.C. Cir. 2020) (quoting *Fogel*, 829 F.2d at 87)) (cleaned up)). Drawing on this Court's precedent, the district court concluded that Little "lacked a legitimate expectation of finality [in any part of his original split sentence] under *Fogel* because he received an illegal sentence and challenged it on direct appeal" (JA286).

onerous than imprisonment" (JA288-89 (quoting *Martin*, 363 F.3d at 39)). Instead, it would "use its judgment to select an appropriate, fact-sensitive ratio based on 'the specific conditions of [Little's] probation and the effect of a sentence reduction on the underlying purposes of the Guidelines as set out in 18 U.S.C. § 3553(a)'" (JA289 (quoting *Martin*, 363 F.3d at 39)).

### *The Resentencing Hearing*

On January 23, 2024, two days before the resentencing hearing, the Probation Office filed a report with the district court, detailing Little's conduct on probation (JA305-07). Among other things, the report described Little's noncompliance with the conditions of his probation, including that "Little refused to comply with his officer's instructions, regarding, payment of restitution, refus[ed] to enroll in Electronic Reporting System (ERS), and refus[ed] to comply with the additional probation term special condition requiring social media restrictions" (JA306).

Even while Little was briefly enrolled in a "low-risk compliant program" between November 2022 and March 2023, where "the majority of communication [wa]s conducted remotely," he "failed to comply with the program by not calling in monthly as required" (*id.*). And, as of the

date of the report, "Little ha[d] not made an effort towards satisfying the outstanding $10 assessment (balance $10) and $500 restitution (balance $500) fees" (*id.*). Although the Probation Officer "emailed Mr. Little the appropriate information needed to make a payment towards [the] outstanding restitution" balance, "Little voice[d] invalid excuses and circle[d] the conversation back to how he feels his voice [wa]s being silenced" (*id.*). The report also noted that Little "minimiz[ed] his actions and attempt[ed] to justify the same," "regularly stat[ing] [that] he was simply parading at the Capitol Building without taking accountability or thinking of the legal consequences of the unlawful situation" (JA306-07).

At the resentencing hearing, on January 25, 2024, the district court imposed a new sentence of 150 days' incarceration (JA308; JA333). The district court credited the time that Little spent in prison and on probation under the vacated split sentence against the new sentence— including 60 days' credit for the 60 days Little previously spent in prison and an additional 30 days' credit for the 18 months Little spent on probation (JA308; JA333). Thus, after accounting for the 90 days' credit to which he is entitled, Little will serve an additional 60 days in prison under his new sentence (JA333).

In calculating the credit owed to Little for the 18 months he spent on probation, the district court reiterated that it "would not engage in a 'day-to-day offset' because probation is much less onerous than imprisonment" (JA309; JA335). In arriving at the appropriate credit, the district court "consider[ed] both the specific conditions of Mr. Little's probation and the effect of a sentence reduction on the Section 3553(a) factors" (JA309; JA336). The district court observed that "the specific conditions of Mr. Little's probation indicate that this time should count for relatively little" (JA309; JA336).

The district court also emphasized that Little "ha[d] spent essentially *no time* in compliance with the terms and conditions of his probation" (JA309; JA336). And it noted that "[t]he mandatory conditions" of probation required Little "to pay the $500 in restitution and $10 in special assessment, yet . . . the Probation Office reported . . . that he 'has not made an effort towards satisfying' either amount . . . despite the Probation Office having raised this issue with [him] numerous times" (JA309-10; JA336-37).

At resentencing, the district court also noted Little's continued "clear lack of remorse" and his attempts to "downplay the attack on the

Capitol while minimizing or denying his personal responsibility" (JA310; JA337). The district court rejected Little's assertion that "he has been persecuted, condemned to 'political prison' for having peacefully protested in the Capitol" (JA311; JA339). Finally, the district court reiterated that Little's "criminal conduct w[as] an essential component to the harm" suffered on January 6, that "[l]aw-enforcement officers were overwhelmed by the sheer swath of criminality," and that "those who engaged in violence that day were able to do so because they found safety in numbers" (JA313; JA343).

## Summary of Argument

Little's claim that the district court violated his double jeopardy rights on remand fails on both procedural and substantive grounds. Procedurally, this appeal marks the second time that Little has argued to this Court that he may not be subjected to any additional punishment because he already completed the 60-day term of imprisonment imposed as part of the original split sentence. The Court implicitly rejected this assertion in Little's first appeal, choosing instead to vacate the split sentence and remand the case to the district court for resentencing.

Having already denied Little this relief, the Court should not revisit this question in this second appeal.

On the merits, the district court did not violate double jeopardy by imposing a new sentence of imprisonment on remand. The district court credited all time previously served under the original split sentence— both in prison and on probation—and imposed a new prison sentence within the statutory maximum. In this way, the district court ensured that the total punishment exacted would not exceed that authorized by statute and thus fully vindicated Little's double jeopardy right against multiple punishments for the same offense. *See Jones v. Thomas*, 491 U.S. 376, 381-82 (1989); *North Carolina v. Pearce*, 395 U.S. 711, 718-19 (1969).

Little's argument to the contrary rests entirely on the assertion that two Supreme Court decisions—*Ex parte Lange*, 85 U.S. 163 (1873), and *In re Bradley*, 318 U.S. 50 (1943)—dictate the outcome here. Specifically, Little argues that *Lange/Bradley* prohibit any additional punishment for a defendant who satisfies one of the two alternative punishments of an unlawful split sentence—i.e., a sentence that imposes two types of punishment for the commission of a single offense where the imposition

of only one or the other is statutorily permitted. This claim, however, is dead on arrival. The Supreme Court has subsequently narrowed the precedential value of these decisions to their specific factual circumstances. *See Jones*, 491 U.S. at 382-87. And Little's case is meaningfully distinguishable.

In *Lange* and *Bradley*, the Supreme Court found that defendants who were sentenced to both a fine and imprisonment, where the statute allowed only one of these alternative punishments but not both, could not be subject to imprisonment once they paid the fine in full. *Lange*, 85 U.S. at 175-76; *Bradley*, 318 U.S. at 52. While subsequently limited to their facts, these cases still illustrate the more general rule that double jeopardy "prohibits punishment in excess of that authorized by the legislature." *Jones*, 491 U.S. at 383. After all, any term of imprisonment imposed on top of the already-paid fines in those cases would have exceeded the statutorily authorized punishment.

This case is different. First and foremost, Little's now-vacated split sentence included imprisonment and probation—two types of punishment that can be credited one against the other. Thus, "[w]hile it would not have been possible to 'credit' a fine against time in prison" in

*Lange* and *Bradley*, *Jones*, 491 U.S. at 384, the time that Little previously spent on probation could be—and in fact was—credited against his new prison sentence. Second, *Lange/Bradley* did not prohibit a court from increasing the amount of the satisfied alternative punishment (the fine in *Lange/Bradley*, prison in Little's case) to maintain the aggregate intended punitive effect of the split sentence. And this is what the district court did here. For each of these reasons, *Lange/Bradley* are inapposite.

Nonetheless, Little presents a number of arguments—some raised for the first time on appeal—in support of his claim that *Lange/Bradley* are controlling. None move the needle in his favor. The district court on remand addressed a situation meaningfully different than that presented in *Lange/Bradley*, and it carefully crafted a new sentence that both satisfied the district court's responsibilities under 18 U.S.C. § 3553(a) and fully protected Little's double jeopardy rights. In accordance with widely accepted principles, this sentence credits all time previously served on probation and in prison. And the total punishment exacted falls within the maximum authorized by statute. The district court did not violate Little's double jeopardy rights and the *Lange/Bradley* rule does not say otherwise.

17

# ARGUMENT

## The New Sentence Imposed on Remand Does Not Violate Double Jeopardy.

### A.    Applicable Legal Principles and Standard of Review

"The Double Jeopardy Clause of the Fifth Amendment provides that no person shall be 'subject for the same offense to be twice put in jeopardy of life or limb.'" *Jones v. Thomas*, 491 U.S. 376, 380 (1989). The Clause protects criminal defendants against (1) "a second prosecution for the same offense after acquittal"; (2) "a second prosecution for the same offense after conviction"; and, as relevant to this appeal, (3) "multiple punishments for the same offense imposed in a single proceeding." *Id.* at 381 (cleaned up). The Supreme Court first recognized the third protection—against multiple punishments—in "the landmark case of *Ex parte Lange*." *North Carolina v. Pearce*, 395 U.S. 711, 717 (1969). Subsequent Supreme Court precedent clarified that, "in the multiple punishments context, th[e] interest [of the Double Jeopardy Clause] is 'limited to ensuring that the total punishment did not exceed that authorized by the legislature.'" *Jones*, 491 U.S. at 381. When faced with a resentencing, "crediting time already served against" a new sentence

18

ensures that the total punishment stays within permissible bounds. *Id.* at 382; *see also Pearce*, 395 U.S. at 718-19.

This Court reviews questions of law, including claims that the district court violated the Double Jeopardy Clause, de novo. *United States v. McCallum*, 721 F.3d 706, 709 (D.C. Cir. 2013). Unpreserved claims are reviewed for plain error. *In re Sealed Case*, 349 F.3d 685, 690-91 (D.C. Cir. 2003).

## B. The Court Already Rejected Little's Requested Relief in His First Appeal.

At the threshold, the Court already considered the appropriate relief for Little's unlawful split sentence in his first appeal. And, in vacating his split sentence and remanding the case for resentencing, the Court implicitly rejected Little's assertion that he may not be subjected to any additional punishment because he already completed the split sentence's 60-day term of imprisonment. Given this history, the Court should not reconsider the appropriate relief in a second appeal. *See LaShawn A. v. Barry*, 87 F.3d 1389, 1393-94 (D.C. Cir. 1996) (en banc) ("law-of-the-case doctrine holds that decisions rendered on the first appeal should not be revisited on later trips to the appellate court," including "questions decided 'explicitly or by necessary implication'").

Little had "already served his entire term of imprisonment" when he submitted his brief to this Court in his first appeal and, for this reason, he argued that "the proper remedy [for his split sentence] [wa]s to reverse and remand with instructions that [he] be immediately discharged from probation and that an amended judgment be issued reflecting no probationary term." Appellant Br., *United States v. Little*, No. 22-3018, at 40 (D.C. Cir. July 28, 2022); see also Appellant Reply Br., *United States v. Little*, No. 22-3018, at 30 (D.C. Cir. Oct. 7, 2022) (similar). Now, in his second appeal, Little seeks the same relief—to be free of any further punishment because he already served the 60-day prison term of the now-vacated split sentence.

But the Court evidently did not find merit in this position the first time around. Indeed, it did not release Little from any further punishment when it found his split sentence to be unlawful in his first appeal. Instead, the Court "vacate[d] Little's sentence and remand[ed] to the district court for resentencing." *Little I*, 78 F.4th at 461.[2]

---

[2] The Court recently came to the same conclusion in another split sentence case after full presentation of the double jeopardy issue. In *United States v. Caplinger*, No. 22-3057, the district court sentenced the defendant to a split sentence of incarceration and probation for the

(continued . . . )

Notably, this Court would not have vacated the split sentence in its

entirety and remanded the case for resentencing if it agreed with Little

that the proper remedy for the unlawful split sentence was simply to free

him from any further punishment or if it understood the district court to

have had no authority to impose a new sentence that exacted additional

punishment to compensate for that which this Court forbade. Indeed,

implicit in the Court's decision to remand the case for resentencing was

the authority of the district court to impose additional punishment. *Cf.*

*United States v. Blackson*, 709 F.3d 36, 42 (D.C. Cir. 2013) ("If we had

not expected the district court on remand to consider whether and how

---

commission of a single petty offense. Caplinger appealed and the appeal
was held in abeyance pending the disposition of *Little I*. After the Court
issued its decision in *Little I*, the government requested that Caplinger's
case be remanded to the district court for resentencing. Caplinger
opposed and instead requested that the Court simply vacate the
probationary term of his split sentence. Similar to Little's claim in this
appeal, Caplinger argued that the Double Jeopardy Clause prohibited
any further punishment because he had already completed the initially
imposed prison term. See Caplinger's Renewed Motion to Vacate, *United
States v. Caplinger*, No. 22-3057 (D.C. Cir. Dec. 11, 2023); Government's
Opposition to Renewed Motion to Vacate, *United States v. Caplinger*, No.
22-3057 (D.C. Cir. Dec. 21, 2023). The Court did not heed Caplinger's
claim when it vacated his split sentence and remanded the case for
resentencing. *United States v. Caplinger*, No. 22-3057, 2024 WL 718720
(D.C. Cir. Feb. 21, 2024).

[a vacated count] affected the original sentence, there would have been no need to remand for resentencing at all; we could simply have directed the court to vacate the count without touching the sentence."). This is further evidenced by Judge Wilkin's acknowledgement in dissent—undisputed by the majority in Little's first appeal—that, at resentencing, the district court could impose a term of imprisonment or a term of probation longer than that which was originally imposed "if [the district court] concluded that either a longer prison or probationary term were required to meet the goals of 18 U.S.C. § 3551." *Little I*, 78 F.4th at 469 n.3 (Wilkins, J., dissenting).

Thus, having already rejected Little's requested relief in his first appeal, the Court need not revisit the issue here. *Lashawn A.*, 87 F.3d at 1393.[3]

---

[3] It makes no difference that Little's request for relief in his first appeal did not squarely tee up his double jeopardy argument for the Court. Little's double jeopardy theory—and specifically his belief that *Lange/Bradley* control this case—unquestionably formed the basis of his assertion in his first appeal that the proper remedy for the split sentence was that he be immediately discharged from probation. And this Court has repeatedly explained that "where an argument could have been raised on an initial appeal, it is inappropriate to consider that argument on a second appeal following remand." *United States v. Brice*, 748 F.3d 1288, 1289 (D.C. Cir. 2014); *see also, e.g.*, *Hartman v. Duffey*, 88 F.3d
(continued . . . )

### C.   The New Sentence Does Not Violate Double Jeopardy Because It Credits All Time Previously Served and Falls within the Statutory Maximum.

Little's claim also fails on the merits. Consistent with the Supreme Court's decisions in *Jones v. Thomas*, 491 U.S. 376 (1989), and *North Carolina v. Pearce*, 395 U.S. 711 (1969), the following rule governs the double jeopardy issue presented in this case: imposition of a new sentence after a defendant successfully challenges the validity of his original sentence does not violate double jeopardy so long as all punishment exacted under the original sentence is credited against the new sentence and the total punishment does not exceed the maximum allowed by statute. *See Jones*, 491 U.S. at 381-82 ("crediting time already served against [final] sentence" vindicates double jeopardy interest in "ensuring that the total punishment d[oes] not exceed that authorized by the legislature"); *Pearce*, 395 U.S. at 718-19 ("constitutional guarantee

---

1232, 1236 (D.C. Cir. 1996) ("We do not reach the merits of defendant's arguments on this issue because of the defendant's failure to pursue it in its prior appeal.").

against multiple punishments for the same offense absolutely requires that punishment already exacted must be fully 'credited'").[4]

Indeed, crediting time previously served against a new sentence is an uncontroversial—and necessary—tool used to protect a defendant's double jeopardy interest against multiple punishments for the same offense. *See Jones*, 491 U.S. at 381-82; *Pearce*, 395 U.S. at 718-719.[5] Such crediting "ensur[es] that the total punishment d[oes] not exceed that authorized by the legislature" in violation of double jeopardy. *Jones*, 491 U.S. at 381; *see also, e.g.*, *United States v. Martin*, 363 F.3d 25, 37, 40 (1st Cir. 2004) (all "punishment already exacted," including time spent on probation, "must be fully 'credit[ed]'" against "new sentence imposed for

_____

[4] Double jeopardy principles separately protect a defendant's legitimate expectation in the finality of his judgment. *See United States v. Fogel*, 829 F.2d 77, 87-88 (D.C. Cir. 1987). But, as explained further below, a defendant who successfully challenges the validity of his sentence can have no legitimate expectation in its finality. *See, e.g.*, *United States v. Hayes*, 249 F.2d 516, 517 (D.C. Cir. 1957) ("if the sentence were invalid and defendant successfully attacked it, he could be validly resentenced though the resentence increased the punishment").

[5] *See also, e.g.*, *Hayes*, 249 F.2d at 518-19 ("to avoid double jeopardy the resentence must . . . not require[ ] [defendant] to serve again the time he has been imprisoned by reason of the invalid sentence"); *United States v. McMillan*, 917 F.2d 773, 777 (3d Cir. 1990) (double jeopardy requires that time served on probation under vacated sentence "must be fully 'credited'" against new sentence).

the same conviction" to ensure that sentence does not "exceed the maximum punishment allowed by statute"); *United States v. Lominac*, 144 F.3d 308, 317 (4th Cir. 1998) ("Because the interest protected by the Double Jeopardy Clause's prohibition against multiple punishments for the same offense ensures that the total punishment does not exceed that authorized by the legislature, credit must be given [for time spent in prison and on supervised release] . . . when [a defendant] is resentenced after a successful challenge to his original sentence." (cleaned up)), *abrogated on other grounds by Johnson v. United States*, 529 U.S. 694 (2000).

The district court faithfully adhered to these double jeopardy guardrails in resentencing Little to 150 days in prison. It credited all time served under the original split sentence—both in prison and on probation—against the new sentence. Specifically, the district court granted Little 60 days' credit for the 60 days that he spent in prison under the unlawful split sentence and an additional 30 days' credit for the time he spent on probation (JA333). Thus, after crediting, the new sentence only requires Little to spend an additional 60 days in prison (*id.*). And the total punishment of 150 days' imprisonment falls below the

maximum punishment of six months authorized by Congress for Little's conviction. *See* 40 U.S.C. § 5109(b) (violations of § 5104(e)(2)(G) punishable by "not more than six months" in prison). Having credited all time previously served and imposed a new sentence within the statutory maximum, the district court did not violate Little's double jeopardy rights on remand.[6]

### D.   Little's Double Jeopardy Arguments Are Meritless.

Little does not appear to challenge the general validity of the double jeopardy principles laid out above. Rather, he seeks to circumvent them by claiming that his case is controlled by the Supreme Court's decisions in *Lange* and *Bradley*. Specifically, Little claims (at 10) that

---

[6] A number of other defendants convicted of a single petty offense for participating in the January 6, 2021, attack on the United States Capitol have since been resentenced after remand from this Court. All have been credited with time previously served and resentenced within the statutory maximum. *See United States v. Hendrix*, No. 21-cr-426-CKK (resentenced on April 24, 2024, to probation after completion of prison component of vacated split sentence); *United States v. Caplinger*, No. 21-cr-342-PLF (resentenced on April 16, 2024, to probation after completion of prison component of vacated split sentence); *United States v. Morrissey*, No. 21-cr-660-RBW (resentenced on April 10, 2024, to probation having served no part of vacated split sentence); *United States v. Mazzio*, No. 22-cr-214-RCL (resentenced on January 31, 2024, to probation after completion of prison component of vacated split sentence).

*Lange/Bradley* prohibit any additional punishment for a defendant who satisfies one of the two alternatives of an unlawful split sentence—i.e., a sentence that imposes two types of punishment for the commission of a single offense where the imposition of only one or the other is statutorily permitted. Thus, according to Little, *Lange/Bradley* prohibited the district court from "exact[ing] additional punishment" on remand because he had already served the entirety of the split sentence's 60-day prison term.

This argument, however, is built on impossibly shaky ground. In the 150 years since *Lange* was decided (and the 80 years since *Bradley*), the Supreme Court has clarified the scope of these decisions and narrowed their precedential value to their specific context. Whatever superficial parallels may be drawn, Little's case is factually distinguishable in important ways that remove it from the now-narrow ambit of those cases. And, as the merits of Little's challenge rest entirely on *Lange/Bradley*, his claim must fail.

## 1. *Lange* and *Bradley* Are Not Controlling.

At its essence, Little's claim boils down to his insistence (at 11-14) that the *Lange/Bradley* doctrine prohibits subjecting him to any

additional punishment because his is "a true alternative sentences case." Review of these decisions and the Supreme Court's subsequent treatment of them, however, reveals this claim to be meritless.

*Lange* and *Bradley* involved defendants sentenced to a fine and imprisonment under statutes that permitted the imposition of either a fine or imprisonment, but not both. In *Lange*, the Supreme Court held that the defendant was entitled to immediate release because he had already paid the statutory maximum fine in full, stating that resentencing him to the alternative punishment of imprisonment would "punish[ ] [him] twice for the same thing." 85 U.S. at 175. And, in a brief opinion that relied on *Lange* with no mention of double jeopardy, the Supreme Court held in *Bradley* that the defendant "[wa]s entitled to be freed of further restraint" because he had already paid the fine in full. 318 U.S. at 52. In each case, the Supreme Court rejected the lower courts' post-sentencing attempts to amend their judgments by omitting the already-paid fines and leaving intact the terms of imprisonment. *Lange*, 85 U.S. at 175-76; *Bradley*, 318 U.S. at 51-53.

Admittedly, *Lange* and *Bradley* have some superficial appeal. But the precedential value of these decisions must be viewed through the lens

of the Supreme Court's subsequent narrowing of their applicability. For example, in *Jones*, the Supreme Court clarified that "the interest that the Double Jeopardy Clause seeks to protect . . . in the multiple punishment context . . . is limited to ensuring that the total punishment did not exceed that authorized by the legislature." 491 U.S. at 381 (cleaned up). Thus, it held that "*Lange* . . . stands for the uncontested proposition that the Double Jeopardy Clause prohibits punishment in excess of that authorized by the legislature, and not for the broader rule suggested by its dictum," *id.* at 383 (citation omitted)—i.e., *Lange* should not be read to support a broad rule "that once a defendant 'had fully suffered one of the alternative punishments to which alone the law subjected him, the power of the court to punish further was gone,'" *id.* at 382 (quoting *Lange*, 85 U.S. at 176). Likewise, the Supreme Court limited *Bradley* to "its facts." *Id.* at 386.

In determining that *Lange/Bradley* did not control the outcome in *Jones*, the Supreme Court highlighted two "important differences" that distinguished the facts of the latter from the former.[7] Specifically, the

---

[7] In *Jones*, the defendant was sentenced to consecutive terms of 15 years' imprisonment for attempted robbery and life in prison for felony murder

(continued . . . )

Supreme Court noted that: (1) unlike *Lange/Bradley*, *Jones* did not "involve[ ] alternative punishments that were prescribed by the legislature for a single criminal act," 491 U.S. at 384; and (2) "[w]hile it would not have been possible to 'credit' a fine against time in prison [in *Lange/Bradley*], crediting time served under one sentence against the term of another has long been an accepted practice." *Id.* Little seizes on the first statement to claim (at 17) that "*Jones* reiterated that the *Bradley* rule continues to apply in [true alternative sentences] case[s]." This assertion, however, overstates *Jones* and ignores the second "important difference[ ]" that distinguished the facts in *Jones* from *Lange/Bradley*. Contrary to Little's suggestion, the Supreme Court in *Jones* did not hold that *Lange* and *Bradley* continue to dictate the outcome in all "true

---

arising out of the same incident. 491 U.S. at 378. The state supreme court later found, in an unrelated case, that the felony murder statute did not allow for the imposition of separate punishments for felony murder and the underlying felony. *Id.* The trial court subsequently vacated the attempted robbery conviction (and its sentence, which the defendant had already completed) and left the felony murder conviction in place, crediting the time served on the attempted robbery sentence against the remaining felony murder life sentence. *Id.* at 379. The Supreme Court recognized that the defendant had been subject to two punishments where only one was authorized but concluded that crediting time served under the vacated sentence against the remaining sentence vindicated the defendant's double jeopardy rights. *Id.* at 381-82.

alternative sentences case[s]." Rather, it limited *Lange* and *Bradley* to their specific factual context and merely identified two "important differences" that took *Jones* out of their ambit. *Id.*

This does not mean, however, that these decisions have been overruled. Rather, the *Lange/Bradley* line of cases continues to stand for the foundational principle that a court may not impose punishment in excess of that authorized by the legislature. And application of this rule to the specific facts of *Lange* and *Bradley* necessitated the outcomes reached by the Supreme Court in those cases. Indeed, the full payments of the fines in *Lange* and *Bradley* meant that those defendants had already suffered one of two authorized alternative penalties such that they could not also be subject to the alternative punishment of imprisonment. Because "it would not have been possible to 'credit' a fine against time in prison," *Jones*, 491 U.S. at 384, any term of imprisonment imposed on top of the already-paid fine would have been "in excess" of the punishment authorized by the legislature, *id.* at 383.

Following the Supreme Court's explicit direction, this Court and others have accepted the limited applicability of the *Lange/Bradley* line of cases. For example, in *Fogel*, this Court recognized that "the holding[ ]

in *Ex parte Lange* . . . now mean[s] only that a court which imposes a sentence greater than that authorized by the legislature subjects a defendant to multiple punishment in violation of the double jeopardy clause." 829 F.2d at 86-87. Other courts have explicitly recognized the same. *See, e.g.*, *Martin*, 363 F.3d at 35 ("The Supreme Court has more recently described these cases as standing for the proposition that 'a defendant may not receive a greater sentence than the legislature has authorized.'"); *United States v. Versaglio*, 85 F.3d 943, 948 (2d Cir. 1996) ("*Lange*'s holding has been confined to its context," which is "a defendant who has paid a fine and thereby gained insulation from an alternative sentence of imprisonment," and "*Jones* . . . limited *Bradley* to its facts"); *United States v. Holmes*, 822 F.2d 481, 498 (5th Cir. 1987) ("the rule of *Lange* (and, impliedly, of *Bradley*) bar[s] further punishment that, with the punishment already suffered, would exceed the limits legislatively authorized").[8]

---

[8] In *Holmes*, the Fifth Circuit described the narrow scope of the *Lange/Bradley* line of cases in the following way:

> The *Bradley* cases stand apart from this general rule, however. The contempt statute authorizes only a fine or imprisonment, and the full payment of a fine satisfies one

(continued . . . )

And other courts of appeal have illustrated *Lange/Bradley*'s limited scope in ways that are relevant to this appeal. For example, in *Lominac*, the Fourth Circuit held that "*Bradley* does not bar resentencing" where two components of an unlawful split sentence are of the type that can be credited against each other. 144 F.3d at 318. The defendant in *Lominac* was sentenced to both imprisonment and supervised release even though the applicable statute only authorized the imposition of imprisonment in the defendant's particular circumstances. *Id.* at 317-318. And by the time the Fourth Circuit heard the appeal, the defendant had already served the entire term of imprisonment and some portion of the term of supervised release

---

lawful alternative sentence. Sentences involving imprisonment not yet fully served or a term of imprisonment below the maximum authorized by an offense statute are not analogous, nor are cases in which a defendant appeals a dual sentence before satisfying either prong. What differentiates the *Bradley*-type case from these other cases is that a *Bradley* defendant who has paid his fine has suffered the maximum sentence authorized by the statutes.

822 F.2d at 498-99; *see also id.* at 499 n.30 (listing cases not controlled by *Bradley* because, among other things, they involved "resentencing . . . after sentences that were below the maximum authorized by offense statutes, or after a defendant appealed the entirety of his sentence or challenged a sentence but had not fully satisfied a sentence as great as the law allows").

imposed under the unlawful split sentence. *Id.* at 317. Nevertheless, the Fourth Circuit remanded the case to the district court for resentencing because the district court "might have validly concluded that a prison term of longer than [that imposed] was appropriate" if it had "recognized that it lacked authority to impose the . . . term of supervised release." *Id.*

The Fourth Circuit distinguished *Bradley*, noting that while the "'alternative sentences in *Bradley*'" of imprisonment and a fine "'were of a different type,' and it simply was not 'possible to "credit" a fine against time in prison,'" "it is possible to credit [defendant's] time served on supervised release against any time to be served in prison." *Id.* at 318 (quoting *Jones*, 491 U.S. at 384). In other words, "[u]nlike the monetary sanction of a fine, which cannot be converted into an equivalent temporal sanction, [defendant's] term of supervised release restrained his liberty for a known period of time that can be credited against any future sentence of imprisonment." *Id.*

And, in *Versaglio*, the Second Circuit held that the *Lange/Bradley* rule does not prohibit resentencing a defendant to an increased fine on remand where the district court had originally imposed an unlawful split sentence of a fine and imprisonment and where the defendant had

already paid the full amount of the originally imposed fine. 85 F.3d at 948. The Second Circuit vacated the term of imprisonment because the fine had already been paid and noted that "[n]o issue was raised in either *Lange* or *Bradley* as to a sentencing court's power to revise the *amount* of a fine in light of the unavailability of imprisonment." *Id.* Thus, recognizing that the two components of the original split sentence were intertwined, the Second Circuit remanded the case to the district court to "consider[ ] whether to make an upward adjustment in the amount of the fine" in order to maintain "the aggregate punitive effect of [the original] sentence." *Id.* at 949.

Like *Lominac* and *Versaglio*, the facts of this case are distinguishable from *Lange/Bradley*. Indeed, *Lange/Bradley* provided no bar to resentencing Little to a longer term of imprisonment for at least two independent reasons. First, unlike in *Lange* and *Bradley*, Little's split sentence did not involve alternative punishments that are impossible to credit against each other. Rather, as in *Lominac*, and as examined in greater detail below, any time previously served on probation could be—and in fact was—credited against the future term of imprisonment imposed at resentencing. *Lominac*, 144 F.3d at 318; *see*

*also Martin*, 363 F.3d at 38 ("we join other courts of appeals in holding that these similarities are sufficient to allow crediting of probation against imprisonment").

Second, "[n]o issue was raised in either *Lange* or *Bradley* as to a sentencing court's power to revise the *amount* of [prison time] in light of the unavailability of [probation]." *Versaglio*, 85 F.3d at 948. *Lange/Bradley* prohibited the imposition of a second punishment of imprisonment after the defendants in those cases fully satisfied the first alternative of a fine. But, as noted in *Versaglio*, these cases did not prohibit—or even address—the authority of a sentencing court "to make an upward adjustment in the" fully satisfied alternative in order to maintain "the aggregate punitive effect of [the original] sentence." *Id.* at 949.[9] And this is exactly what happened here.

---

[9] This is not surprising as neither *Lange* nor *Bradley* presented an opportunity for the Supreme Court to consider this issue. The district courts in both *Lange* and *Bradley* purported to issue amended judgments omitting the satisfied fines and retaining the original terms of imprisonment. *Lange*, 85 U.S. at 175-76; *Bradley*, 318 U.S. at 51-52. And, in *Lange*, the split sentence imposed the statutory maximum fine on top of the prison sentence. 85 U.S. at 164.

At Little's first sentencing, the district court intentionally crafted a dual sentencing scheme suited to Little's specific offense and personal circumstances in which each component played an integral part in the overall plan (JA149-50; JA159-61). "Had the court recognized that it lacked authority to impose the [split sentence], it might have validly concluded [at the first sentencing] that a prison term of longer than [60 days] was appropriate." *Lominac*, 144 F.3d at 317. On remand, the district court did exactly that. Faced with the unraveling of its original sentencing plan, the district court imposed a new sentence of imprisonment. In so doing, the district court fulfilled its statutory responsibility to "impose a sentence sufficient, but not greater than necessary, to comply with the purposes [of the sentencing statute]," 18 U.S.C. § 3553(a), and simultaneously ensured protection of Little's double jeopardy rights by crediting all time previously served against a new sentence within the statutory maximum.[10]

---

[10] Little misunderstands (at 15-19) the significance of the fact that the prison component of his now-vacated split sentence was below the statutory maximum of six months. Little's new sentence of 150 days' imprisonment does not violate double jeopardy because the new sentence in its entirety (including credit for all time previously served) falls within the statutory maximum punishment—not because the prison component

(continued . . . )

## 2.    Time Served on Probation can be Credited Against Imprisonment.

Little next protests (at 20-26) that *Lange* and *Bradley* control because imprisonment and probation—like a fine and imprisonment—are different types of punishment that cannot be credited one against the other. Little did not make this argument below and it is therefore subject to plain error review on appeal.[11] And because there is neither "controlling precedent on the issue" nor an "'absolutely clear' legal norm" against such crediting, Little's argument must fail. *United States v. Pyles*, 862 F.3d 82, 88 (D.C. Cir. 2017). Regardless, under any standard

---

of the original split sentence fell below the statutory maximum. That said, if Little had served the statutory maximum prison term under the split sentence, any further punishment would have necessarily been "in excess" of the punishment authorized by statute. *Jones*, 491 U.S. at 383.

[11] While Little objected to the district court's crediting ratio at the resentencing hearing, suggesting that a 5:1 ratio would be "a better ratio," he did not suggest that time spent on probation cannot be credited against a future term of imprisonment (JA346). In fact, Little appears to have expressed approval for this type of crediting in his written submissions to the district court prior to resentencing (see JA196 ("the *Lominac* court directed the sentencing judge to credit the time spent on impermissible supervised release against any additional imprisonment imposed, essentially mooting the issue"); JA272 (discussing crediting scheme outlined by government without objection)).

of review, crediting time spent on probation against a future term of imprisonment is permissible.

Lange and Bradley did not address whether time spent on probation can be credited against a future term of imprisonment. They accordingly cannot be controlling on that issue—especially where the Supreme Court has subsequently limited those cases to their facts. Nonetheless, Little asserts (at 20) that "relying on 'credit' in an alternative-sentences case is directly precluded by Bradley" because the Supreme Court rejected the efforts of the district court to refund the fine in that case. Not so. Justice Scalia raised this exact argument in his dissent in Jones, expressing his disapproval of "the Court distinguish[ing] Bradley on the ground that . . . it would not have been possible to credit the satisfied fine against the as-yet-unserved sentence." Jones, 491 U.S. at 391 (Scalia, J., dissenting). Justice Scalia explained that "[i]t is difficult to imagine, however, why the difference between a credit and a refund (which could have been made in Bradley) should be of constitutional dimensions insofar as the Double Jeopardy Clause is concerned." Id. But, regardless of the rationale, the majority in Jones disagreed and found the rejected refund in Bradley to

be meaningfully different than crediting time served under one punishment against another. *Id.* at 383-84.

Given this general statement of approval in *Jones*, it is not surprising that Little identifies no authority prohibiting such crediting. To the contrary, as conceded by Little (at 23-25), courts have widely approved of crediting probation (and supervised release) against imprisonment. *See, e.g., Martin*, 363 F.3d at 38 (probation and imprisonment); *United States v. Carpenter*, 320 F.3d 334, 346 (2d Cir. 2003) (home detention and imprisonment); *Lominac*, 144 F.3d at 318 (supervised release and imprisonment); *United States v. Miller*, 991 F.2d 552, 554 (9th Cir. 1993) (home detention and imprisonment); *United States v. Derbes*, No. 02-cr-10391, 2004 WL 2203478, at *2 (D. Mass. Oct. 1, 2004) (probation and imprisonment); *Andre v. United States*, 213 A.3d 1286, 1290 (D.C. 2019) (probation and imprisonment); *State v. Jepsen*, 907 N.W.2d 495, 497 (Iowa 2018) (probation and imprisonment).

This broad consensus makes sense. Although imprisonment and probation are not identical punishments, they are comparable in a way that allows for one to be credited against the other. Since the passage of the Sentencing Reform Act of 1984, both are sentencing options that may

be imposed after consideration of the same sentencing factors. *See Little I*, 78 F.4th at 454-55; *United States v. Godoy*, 706 F.3d 493, 496 (D.C. Cir. 2013) ("When meting out sentences, judges must consider the goals of punishment, deterrence, incapacitation, and rehabilitation.").[12] And, unlike a fine, both imprisonment and probation are punishments that constrict a defendant's liberty for a defined period of time. *See Griffin v. Wisconsin*, 483 U.S. 868, 874 (1987); *Martin*, 363 F.3d at 38. In this vein, the Supreme Court has explained:

> Probation is simply one point (or, more accurately, one set of points) on a continuum of possible punishments ranging from solitary confinement in a maximum-security facility to a few hours of mandatory community service. A number of different options lie between those extremes, including confinement in a medium- or minimum-security facility, work-release

---

[12] Little appears to suggest (at 22) that probation and imprisonment are "fundamentally 'different'" because the primary purpose of the former is "rehabilitation" and of the latter is "punishment." This view is antiquated. While it is true that a sentencing court may not "seek[ ] to achieve rehabilitation through imprisonment," both imprisonment and probation are now punishment options that require a sentencing court to consider all 18 U.S.C. § 3553(a) sentencing factors before imposition. *In re Sealed Case*, 573 F.3d 844, 851 (D.C. Cir. 2009) (emphasis omitted). And, in fact, in this case, the district court included probation as part of the original split sentence not for purposes of rehabilitation but to "'afford adequate deterrence to criminal conduct' and 'protect the public from further crimes of the defendant'" (JA159 (quoting 18 U.S.C. § 3553(a)(2)(B)-(C)))—both of which are also proper considerations for a sentence of imprisonment.

> programs, "halfway houses," and probation—which can itself be more or less confining depending upon the number and severity of restrictions imposed.

*Griffin*, 483 U.S. at 874; *see also United States v. Knights*, 534 U.S. 112, 119 (2001) (quoting *Griffin* with approval). Situated on the same "continuum" of punishment, *Griffin*, 483 U.S. at 874, imprisonment and probation "each restricts a defendant's liberty (albeit to varying degrees) over a specific period of time, allowing the . . . crediting of probation against imprisonment," *Martin*, 363 F.3d at 38.[13]

---

[13] Little's reliance (at 22-23) on *United States v. Gordon*, 961 F.2d 426 (3d Cir. 1992), is misplaced. *Gordon* did not address the possibility of crediting time previously served on probation against a future term of imprisonment. Rather, it addressed the proper construction of a statute that required a probationer in possession of a controlled substance to be resentenced to imprisonment "not less than one-third of the original sentence." *Gordon*, 961 F.2d at 428. Two years later, in *United States v. Granderson*, 511 U.S. 39 (1994), the Supreme Court put this issue to rest, holding that "original sentence" referred to the term of incarceration to which a defendant could have been sentenced—not the term of probation to which the defendant had actually been sentenced. *Id.* at 41-43. In reaching this conclusion, the Supreme Court noted that "[o]ne-third of a 60-month term of *probation* or 'conditional liberty' is a sentence scarcely resembling a 20-month sentence of *imprisonment*." *Id.* at 46 (emphasis in original). Thus, for purposes of construing the statute in question, the Supreme Court found that "probation and imprisonment were [we]re not fungible." *Id.* But *Granderson* did not consider the question of crediting. And, if relevant at all, it supports the conclusion that probation is less onerous than imprisonment and that it therefore should not be credited against imprisonment at a 1:1 ratio (or even a 3:1 ratio).

Little also claims (at 24-26) that crediting probation against prison yields "disparate and arbitrary results" and suggests that any crediting of probation against imprisonment should be "provided on an administrable 1:1 ratio" to avoid violating double jeopardy. As with his more general objection to crediting, Little did not raise this claim below and it is therefore subject to plain error review. And, as with his more general objection, there is neither "controlling precedent on the issue" nor an "'absolutely clear' legal norm" that supports his position, meaning that this argument must fail. *Pyles*, 862 F.3d at 88. Nonetheless, under any standard, this claim holds no water. After all, the fact that the exact crediting ratio varies case-by-case is a feature, not a bug.

The amount of credit required depends on the specific circumstances of any given case. Probation is "far less onerous than imprisonment," and thus it will always restrict liberty less severely than imprisonment. *Martin*, 363 F.3d at 39; *see also Griffin*, 483 U.S. at 874. For this reason, "'fully crediting' probation against a subsequent sentence of imprisonment does not require a day-to-day offset against time to be served in prison." *Martin*, 363 F.3d at 39 (citation omitted). Moreover, probation "can itself be more or less confining depending upon the

43

number and severity of restrictions imposed." *Griffin*, 483 U.S. at 874; *see also Martin*, 363 F.3d at 39 ("Time served in home detention is normally far less onerous than imprisonment, and time served on probation without home detention is even less restrictive of a defendant's freedom."). Thus, there can be no universal crediting ratio applied across all cases. Rather, "fully crediting" all time spent on probation against a future term of imprisonment requires a "fact-based inquiry" that accounts for a defendant's specific circumstances and the degree to which the conditions of probation restricted his liberty. *Martin*, 363 F.3d at 39.

Little relies (at 25-26) on the Iowa Supreme Court's decision in *Jepsen* to argue for a 1:1 ratio. But *Jepsen*—which garnered the support of only four of the seven justices on that court—ignores what the United States Supreme Court made clear in *Griffin*: while probation and imprisonment are situated on a single "continuum" of punishment, probation is less restrictive than imprisonment and it "can be more or less confining depending upon the number and severity of restrictions imposed." 483 U.S. at 874. Notably, a universal 1:1 crediting scheme would itself pose double jeopardy concerns by undervaluing the severity

of imprisonment if a sentencing court were to impose probation at a resentencing after a defendant had already served time in prison.[14]

Notably, other courts have recognized the necessity of a weighted crediting scheme calculated through a case-specific inquiry. *See Martin*, 363 F.3d at 38-40; *Carpenter*, 320 F.3d at 346 ("the conditions of home detention are typically much less onerous than even the least restrictive institutional incarceration" and amount of credit should be anchored in "the precise conditions of [defendant's] home detention"); *Miller*, 991 F.2d at 552 ("[h]ome detention is a lighter punishment than prison" and "[t]he exact amount [of credit] should be dictated by the district court's balancing of the factors given in 18 U.S.C. § 3553(a)(2)"); *Derbes*, 2004 WL 2203478, at *2 & n.6 (noting that "there is no 'one size fits all' formula for determining the required credit" and "treat[ing] three days of home detention and five days of probation as the equivalents of a day in custody" based on specific circumstances of case).

---

[14] Little also claims (at 24) that the Fourth Circuit's decision in *Lominac* supports a 1:1 crediting scheme. Nothing in that decision, however, suggests what crediting ratio would be appropriate. And even if *Lominac* did call for a 1:1 ratio, any such holding would not be binding on this Court and would not be persuasive in light of the considerations discussed above.

45

And, in this case, the district court properly adopted and implemented this methodology, calculating "an appropriate, fact-sensitive ratio" after considering the specific circumstances of Little's case (JA309; JA336). Among other things, the district court found that "the specific conditions of Mr. Little's probation indicate that this time should count for relatively little" (JA309; JA336). Indeed, as evidenced in the Probation Office's report, the conditions of Little's probation were not onerous (JA305-07).[15] Moreover, as reflected in the Probation Office's report and found by the district court, Little "spent essentially *no time* in compliance with the terms and conditions of his probation" (JA306; JA309; JA336).

The minimal restrictions imposed on Little's liberty (and his failure to comply with even these minimal restrictions) confirm the need for a case-by-case determination of where probation falls on the "continuum"

---

[15] Little was not subject to intermittent confinement, home detention, or home confinement of any kind. Moreover, he was enrolled in a "low-risk compliant program" for a number of months where "the majority of communication [wa]s conducted remotely" (JA306). And, for much of his probationary period, the Probation Office appears not to have restricted Little's social media use beyond prohibiting him from "communicating threats, making any threats towards the government, or voic[ing] plans of overthrowing the government" (*id.*).

of punishment and how much credit should be given against a new term of imprisonment. Thus, far from undermining the wisdom of a case-specific crediting scheme, the district court's analysis and case-specific calculation underscores the importance of allowing district courts the flexibility to make these fact-sensitive determinations.[16]

### 3. Little Had No Legitimate Expectation of Finality in the Prison Term of the Split Sentence.

Little's discussion (at 26-35) of the expectation-of-finality line of cases cited by the district court below does not move the needle in his favor. His arguments are both irrelevant to his appeal and meritless.

First, Little's expectation-of-finality arguments rest on his misguided belief that *Lange* and *Bradley* dictate the outcome of this case. Putting aside the merits of this belief (which is refuted at length above), Little's "discussion of [his] expectation of finality makes no independent

---

[16] Notably, Little discusses the ratio employed by the district court (at 25) only to illustrate his faulty claim that case-specific calculations violate double jeopardy. He does not actually challenge the accuracy or fairness of the district court's analysis—or the factual underpinnings of the analysis—that led it to this ratio. Nor does he challenge the ratio itself to the extent that the Court finds that double jeopardy allows for such case-specific inquiries.

contribution to the inquiry, for in the end [his] argument boils down to [*Lange* and] *Bradley*." *Jones*, 491 U.S. at 386. In other words, if Little is correct that *Lange* and *Bradley* control the outcome here, there would be no need to separately address Little's expectation of finality. Likewise, if the government is correct that *Lange* and *Bradley* are distinguishable, Little's expectation-of-finality arguments will necessarily fail.

Second, Little appears to conflate the general double jeopardy protection against multiple punishments with the expectation-of-finality rule. Separate from the general prohibition against imposing punishment in excess of that authorized by the legislature, double jeopardy also protects "against additions to a sentence in a subsequent proceeding that upset a defendant's legitimate expectation of finality." *Jones*, 491 U.S. at 385; *see also Fogel*, 829 F.2d at 87 ("If a defendant has a legitimate expectation of finality, then an increase in that sentence is prohibited by the double jeopardy clause."). A defendant enjoys protections under these separate but related rules, and the violation of one rule does not necessarily implicate the other.

Finally, as found by the district court (JA285-87), Little had no legitimate expectation in the finality of serving only the split sentence's

60-day term of imprisonment where he successfully challenged the validity of this very sentence on appeal. Indeed, double jeopardy's protection of a defendant's interest in the finality of his sentence does not bar increased punishment where that expectation is not legitimate. *See Fogel*, 829 F.2d at 87 ("If, however, there is some circumstance which undermines the legitimacy of that expectation, then a court may permissibly increase the sentence."); *see also United States v. DiFrancesco*, 449 U.S. 117, 137 (1980) ("the Double Jeopardy Clause does not require that a sentence be given a degree of finality that prevents its later increase"). Thus, in this regard, "whether 'an increase in a sentence' violates the Double Jeopardy Clause 'turns on the extent and legitimacy of a defendant's expectation of finality in that sentence.'" *United States v. Casseday*, 807 F. App'x 5, 7 (D.C. Cir. 2020) (quoting *Fogel*, 829 F.2d at 87).

A defendant who successfully attacks an unlawful sentence—by appealing or otherwise challenging the sentence, as Little did—can have no legitimate expectation of finality in the sentence originally imposed. *See, e.g.*, *United States v. Townshend*, 178 F.3d 558, 570 (D.C. Cir. 1999) ("a defendant can have no legitimate expectation of finality regarding the

sentence previously allocated to certain counts while simultaneously challenging his sentence on other counts of the package"); *United States v. Rhodes*, 106 F.3d 429, 432 n.3 (D.C. Cir. 1997) (defendant "defeat[ed] his expectation of finality" in sentence by "[b]y voluntarily challenging [interdependent] conviction"); *United States v. Morris*, 116 F.3d 501 (D.C. Cir. 1997) (defendants had no reasonable expectation in finality of sentence where they "'voluntarily' brought the challenge"); *Davenport v. United States*, 353 F.2d 882, 884 (D.C. Cir. 1965) ("a defendant who successfully attacks an invalid sentence can be 'validly resentenced though the resentence increased the punishment'"); *United States v. Hayes*, 249 F.2d 516, 517 (D.C. Cir. 1957) ("if the sentence were invalid and defendant successfully attacked it, he could be validly resentenced though the resentence increased the punishment"); *cf. Fogel*, 829 F.2d at 89 (defendant had reasonable expectation of finality where he "did not appeal his conviction" or "challenge the original sentence").[17] Nothing in

---

[17] In *Fogel*, this Court found that the district court's sua sponte decision to increase the defendant's sentence violated double jeopardy where the "originally imposed sentence was not impermissible" and where "[t]he increase in the original sentence [wa]s also not predicated on any action taken by the [defendant]." 829 F.2d at 89. In contrast, the split sentence

(continued . . . )

Little's discussion (at 26-35) calls this well-settled legal principle into question.[18]

---

imposed at Little's first sentencing was unlawful and Little was resentenced only after successfully challenging its validity.

[18] At bottom, what Little seeks is a windfall from the district court's error in believing it could impose a split sentence: it is eminently clear that the district court would have imposed a longer term of imprisonment had it known it could not impose probation after a shorter term of incarceration. But "neither the Double Jeopardy Clause nor any other constitutional provision exists to provide unjustified windfalls." *Jones*, 491 U.S. at 387; *see also Bozza v. United States*, 330 U.S. 160, 166-67 (1947) ("The Constitution does not require that sentencing should be a game in which a wrong move by the judge means immunity for the prisoner."). Especially in light of Little's poor performance on probation while he challenged the split sentence, that windfall would be particularly unjustified.

# CONCLUSION

WHEREFORE, the government respectfully submits that the judgment of the District Court should be affirmed.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney

CHRISELLEN R. KOLB
NICHOLAS P. COLEMAN
PATRICK HOLVEY
Assistant United States Attorneys

/s/
REUVEN DASHEVSKY
MA Bar # 693966
Assistant United States Attorney
601 D Street, NW, Room 6.232
Washington, D.C. 20530
Reuven.Dashevsky@usdoj.gov
(202) 252-6829

# CERTIFICATE OF COMPLIANCE WITH RULE 32(a)

I HEREBY CERTIFY pursuant to Fed. R. App. P. 32(g) that this brief contains 10,785 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f) and D.C. Circuit Rule 32(e)(1), and therefore complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B). This brief has been prepared in 14-point Century Schoolbook, a proportionally spaced typeface.

_____/s/_____
REUVEN DASHEVSKY
Assistant United States Attorney

# CERTIFICATE OF SERVICE

I HEREBY CERTIFY that I have caused a copy of the foregoing Brief for Appellee to be served by electronic means, through the Court's CM/ECF system, upon counsel for appellant, Joshua B. Carpenter, Esq., joshua_carpenter@fd.org, on this 20th day of June, 2024.

_____/s/_____
REUVEN DASHEVSKY
Assistant United States Attorney